1
2
3
4
5

UNITED STATES DISTRICT COURT

6

NORTHERN DISTRICT OF CALIFORNIA

7
8

No. C 14-5578 MEJ (PR)

JAMES DARREN CRAWFORD,

9

Plaintiff,

10

v.

11

JEFFREY BEARD, et al.,

12

Defendants.

13

**ORDER OF PARTIAL SERVICE;
DISMISSING CERTAIN CLAIMS
WITH LEAVE TO AMEND;
DENYING MOTION TO APPOINT
COUNSEL**

Docket No. 10

14
15

**INTRODUCTION**

16

Plaintiff, a California state prisoner currently incarcerated at Calipatria State Prison

17

and proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, complaining

18

of civil rights violations at Pelican Bay State Prison ("PBSP"), where he was previously

19

housed.  Plaintiff's amended complaint (Docket No. 11) is currently before the Court for

20

review pursuant to 28 U.S.C. § 1915A.  Also pending before the Court is Plaintiff's motion

21

to appoint counsel (Docket No. 10).

22

**DISCUSSION**

23

**A.    Standard of Review**

24

Federal courts must engage in a preliminary screening of cases in which prisoners

25

seek redress from a governmental entity or officer or employee of a governmental entity.  28

26

U.S.C. § 1915A(a).  In its review the court must identify any cognizable claims, and dismiss

27

any claims which are frivolous, malicious, fail to state a claim upon which relief may be

28

granted, or seek monetary relief from a defendant who is immune from such relief.  28

U.S.C. § 1915A(b)(1),(2).  Pro se pleadings must be liberally construed.  Balistreri v.

United States District Court

For the Northern District of California

1  Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

2      Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of

3  the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific

4  facts are not necessary; the statement need only '"give the defendant fair notice of what the .

5  . . claim is and the grounds upon which it rests.""" Erickson v. Pardus, 551 U.S. 89, 93 (2007)

6  (citations omitted). Although a complaint "does not need detailed factual allegations [in

7  order to state a complaint], . . . a plaintiff's obligation to provide the grounds of his

8  'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation

9  of the elements of a cause of action will not do. . . . Factual allegations must be enough to

10  raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S.

11  544, 555 (2007) (citations omitted). A complaint must proffer "enough facts to state a claim

12  for relief that is plausible on its face." Id. at 570.

13      To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential

14  elements: (1) that a right secured by the Constitution or laws of the United States was

15  violated, and (2) that the alleged deprivation was committed by a person acting under the

16  color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

17  **B.    Amended Complaint**

18      The amended complaint completely replaces the prior complaint. Ferdik v. Bonzelet,

19  963 F.2d 1258, 1262 (9th Cir. 1992). In his amended complaint, Plaintiff claims that PBSP

20  prison officials violated his rights under the First and Fourteenth Amendments by

21  withholding and confiscating his incoming and outgoing mail, and by denying his grievances

22  related to the withholding and confiscation of his mail. Plaintiff sets forth six categories of

23  claims, which the Court addresses in turns below.

24      **1.    Legal Claims**

25          **a.    First Amendment Right to Send Mail**

26  Plaintiff lists three instances in which he alleges that PBSP staff and officials violated

27

28

*United States District Court*
For the Northern District of California

2

his First Amendment right to free speech by failing to send out his mail.[12]

According to the amended complaint, Plaintiff is considered a human rights activist and jailhouse lawyer.  He often publishes writings that are critical of prison officials and of the policies of the California Department of Corrections and Rehabilitations ("CDCR").  See Docket No. 11 at 13.  Plaintiff alleges that, in retaliation for his activism and writings, he has been subjected to threats, racist comments, and destruction of his property.  See id.

Plaintiff states that PBSP processes outgoing mail as follows: Prisoners submit their mail to a correctional officer in his assigned housing unit.  The correctional officer forwards it to the Institutional Gang Investigations unit ("IGI") for screening.  If the mail is not disallowed, IGI forwards the mail to the PBSP mailroom for delivery to the United States Postal Service.  Money is removed from the prisoner's trust account to pay for the price of postage.  If the mail is disallowed, the prisoner receives a stopped mail notification (CDCR Form 1819).  See Docket No. 11 at 14–15.

On November 24 and December 5, 2013, and on January 2, 2014, Plaintiff sent mail to Mary Ratcliff.  See Docket No. 11 at 15–23.  The mailings included copies of articles authored by Plaintiff that criticized CDCR policies and practices.  See id.  Ratcliff never received the mailings.  See id.  Plaintiff never received a stopped mail notification, nor was his trust account debited for postage.  See id.  Plaintiff concludes that his mail never left PBSP, and was instead deliberately and unlawfully confiscated by Officer Burris, the IGI officer assigned to review his mail.  See id. at 16–17.  Plaintiff alleges that Sergeant Countess and Lieutenant Frisk are also liable for this alleged First Amendment violation because they failed to adequately supervise their subordinate, Officer Burris, who was under their direct supervision.  See id. at 37, 39, and 40.

---

[1]These three instances are the basis for his first, second, and third causes of action.  See Docket No. 11 at 45–49.

[2]Plaintiff also discusses a fourth instance where prison officials delayed sending out his November 2013 mailings to Penny Schoner and Anthony Rayson.  Docket No. 11 at 35–41.  However, he does not allege that the delayed sending of these pieces of mail violated his First Amendment right to free speech; rather, he challenges the cancellation of the related grievance in his eleventh cause of action.

United States District Court
For the Northern District of California

Prisoners enjoy a First Amendment right to send and receive mail.  See Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (citing Thornburgh v. Abbott, 490 U.S. 401, 407 (1989)).  A prison may adopt regulations or practices which impinge on a prisoner's First Amendment rights as long as the regulations are "reasonably related to legitimate penological interests."  See Turner v. Safley, 482 U.S. 78, 89 (1987). Plaintiff's allegations, when liberally construed, can plausibly support an inference that Defendant Burris confiscated or destroyed Plaintiff's mail without justification in violation of his First Amendment right to send mail.  See Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (courts "have an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.").

There is no respondeat superior liability under Section 1983, i.e. no liability under the theory that one is responsible for the actions or omissions of an employee.  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  In order to allege facts sufficient to show a jurisdictional basis for imposing liability, a plaintiff must allege facts to show that (1) the defendant proximately caused the deprivation of rights of which plaintiff complains, see Harris v. City of Roseburg, 664 F.2d 1121, 1125 (9th Cir. 1981); (2) the defendant, in a supervisory capacity, failed to properly train or supervise personnel resulting in the alleged deprivation, Ybarra v. Reno Thunderbird Mobile Home Village, 723 F.2d 675, 680 (9th Cir. 1984); (3) the alleged deprivation resulted from custom or policy for which defendant was responsible, see id.; or (4) the defendant knew of the alleged misconduct and failed to act to prevent future misconduct, Taylor, 880 F.2d at 1045.  Liberally construed, the Court finds that Plaintiff states a cognizable claim against Defendants Countess and Frisk for their failure to properly train or supervise Burris, thereby proximately causing the First Amendment violation.

Plaintiff has also named Officers Yates and Nickell — the correctional officers to whom he submitted the mailings — as defendants.  See Docket No. 11 at 1 and 6.  However, Plaintiff has made no allegations linking either Officer Yates or Officer Nickell to any First Amendment violation.  Nor did he name Officer Yates and Nickell in any of the causes of

actions.  In fact, Plaintiff's allegation that IGI received his mailings but deliberately chose not to forward them to the PBSP mailroom for delivery means that neither Officers Yates or Nickell delivered his mailings to IGI and did not interfere with the mailings.  Officer Yates and Nickell are therefore DISMISSED from this action with prejudice.

### b.    First Amendment Right to Receive Mail

Plaintiff lists two instances in which he alleges that Defendants Hall, Patton and Frisk violated his First Amendment right to free speech by failing to deliver mail to him.[3]

In the first instance, Plaintiff never received a December 2013 mailing from Michael Roe.  The Roe mailing was addressed to James Harvey (another inmate), but also listed Mutope Duguma, Plaintiff's New African adopted name, and Plaintiff's CDCR identification number.  Docket No. 11 at 24.  The mail was delivered to Harvey, who informed Correctional Officer Wahlbeck that it was intended for Plaintiff.  See id.  Officer Wahlbeck routed the mailing to Plaintiff.  See id.  Plaintiff never received the mailing.  See id.  The PBSP mailroom denied returning the mailing to Roe, and Roe states that the mailing was not returned to him.  See id. at 25 and 29.  Plaintiff concludes that unidentified Doe defendants intentionally removed his mailing for the re-route box "for illicit purposes."  See id. at 49.  Plaintiff further alleges that Sergeant Hall intentionally misled him as to the whereabouts of his mailing from Michael Roe to cover up the illicit acts of the John Does, and failed to adequately supervise the correctional officers subordinate to him.  See id. at 49–50.

In the second instance, on January 28, 2014, Defendant Frisk stopped a copy of the San Francisco Bay View Newspaper from reaching Plaintiff because a personal handwritten note to Plaintiff was concealed within the pages of the newspaper.  Docket No. 11 at 31.  The stop action was approved by Defendant Patton.  See id. at 31. Plaintiff alleges that the note was from the editor and referred him to a specific article, and that these type of notes are not prohibited by CDCR regulations.  See id. at 32.

As discussed *supra*, a prison may adopt regulations or practices which impinge on a

---

[3]These two instances are the basis for his fourth and fifth causes of action.  See Docket No. 11 at 49–51.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

prisoner's First Amendment rights as long as the regulations are "reasonably related to legitimate penological interests." See Turner, 482 U.S. at 89. The Turner standard applies to regulations and practices concerning all correspondence between prisoners and to regulations concerning incoming mail received by prisoners from non-prisoners. See Thornburgh, 490 U.S. at 413. Prison regulations requiring mail to inmates to include the inmate's committed name and identification number and a return address implicates an inmate's First Amendment rights. Morrison v. Hall, 261 F.3d 896, 906 (9th Cir. 2001). Liberally construed, the Court finds that Plaintiff has stated a cognizable claim against Defendants Frisk and Patton for a First Amendment violation of his right to receive mail.

However, Plaintiff has failed to state a cognizable claim against Sergeant Hall. Sergeant Hall is linked to the First Amendment violation by (1) misleading Plaintiff about the whereabouts of his mail from Michael Roe and (2) failing to supervise his subordinates. A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. Id. Plaintiff's allegations do not meet these standards, and therefore do not state claims for relief.

Plaintiff's conclusion that Sergeant Hall caused the First Amendment violation because, two weeks after the Roe mailing was re-routed, he misrepresented the location of the mailing is speculative. Factual allegations in a complaint must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp., 550 U.S. at 555.

Similarly, Plaintiff's allegations regarding Sergeant Hall's supervisory liability are speculative and conclusory. As discussed supra, supervisory liability exists only where the defendant, in a supervisory capacity, failed to properly train or supervise personnel resulting in the alleged deprivation, Ybarra, 723 F.2d at 680; or the alleged deprivation resulted from

custom or policy for which defendant was responsible, see id.; or the defendant knew of the alleged misconduct and failed to act to prevent future misconduct, Taylor, 880 F.2d at 1045. Plaintiff does not explain how Sergeant Hall's subordinates are involved in routing mail, or how Sergeant Hall's failure to supervise resulted in the improper removal of Plaintiff's mail from the re-route box. In addition, a single instance of Plaintiff's re-routed mail disappearing or of Sergeant Hall misrepresenting facts fails to establish a custom or policy. Plaintiff's claim against Sergeant Hall is DISMISSED with leave to amend to correct the identified deficiency, if he can truthfully do so. See Eldridge v. Block, 832 F.2d 1132, 1135–36 (9th Cir. 1987). If Plaintiff chooses to replead this claim against Sergeant Hall, he must plead factual content that allows the court to draw the reasonable inference that Sergeant Hall failed to adequately supervise his subordinates, and that this failure caused the First Amendment violation.

### c.   First Amendment Retaliation

Plaintiff sets forth three First Amendment retaliation claims, relying on the same facts used to support his First Amendment claims based on the right to send mail.[4] Plaintiff claims that Defendants Burris, Countess, and Frisk interfered with his mail in retaliation for Plaintiff's engaging in protected speech with media outlets and political groups. Plaintiff notes that the mailings to Mary Ratcliff contained articles authored by Plaintiff that were critical of CDCR.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote omitted). The Court finds that, liberally construed, Plaintiff's allegations regarding his outgoing mail to Mary Ratcliff sent on November 24, 2013, December 5, 2013,

---

[4]These claims are his sixth, seventh, and eighth causes of action. See Docket No. 11 at 51–55.

1    and January 2, 2014, state cognizable retaliation claims.

2                    **d.      First Amendment Right to Access the Courts**

3              Plaintiff alleges that Defendants Bramucci, Bond, Ducart, Hodges, Allen and Zamora

4    violated his First Amendment right to access to the courts when they cancelled his grievances

5    challenging the above-referenced confiscation of the San Francisco Bay View, challenging

6    the above-referenced return of his mailing from Michael Roe, and challenging the delay of

7    outgoing mail sent by Plaintiff to Penny Schoner and Anthony Rayson.[5]  Plaintiff contends

8    that the cancellations denied him a meaningful review of his administrative appeals in that,

9    among other things, prison officials did not follow regulations set for appeals.

10             Under the First Amendment, prisoners have the right to access the courts and the right

11   to petition the government for a redress of grievances.  See Bounds v. Smith, 430 U.S. 817,

12   821 (1977).  The right of meaningful access to the courts extends to established prison

13   grievance procedures.  Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995) overturned on

14   other grounds by Shaw v. Murphy, 532 U.S. 223, 230 n. 2 (2001)); accord Hines v. Gomez,

15   853 F. Supp. 329, 331–32 (N.D. Cal. 1994).  Liberally construed, Plaintiff's allegations that

16   Bramucci, Bond, Ducart, Hodges, Allen, and Zamora denied him a meaningful review of his

17   administrative appeals states a First Amendment violation.

18             To the extent that Plaintiff is arguing that the cancellation of his grievances renders

19   him unable to meet the exhaustion requirement of the Prison Litigation Reform Act

20   ("PLRA"), that argument fails to state a claim for denial of access to the courts.  To establish

21   a violation of the right of access to the courts, a prisoner must establish that he has suffered

22   an "actual injury" as a result of a prison official's misconduct.  See Lewis v. Casey, 518 US.

23   343, 351–52 (1996).  Plaintiff has not alleged in his amended complaint that his claims have

24   been dismissed for failure to exhaust or that he has otherwise been unable to present his

25   claims.  See id. at 348.

26

27

28             [5]These claims are his ninth, tenth, and eleventh causes of action.  See Docket No. 11 at
     51–55.

8

**United States District Court**
For the Northern District of California

### e.    First Amendment Conspiracy

Plaintiff claims that Defendants Williams, Love, Bell, Ducart, Hodges, and Zamora conspired to cover up their First Amendment violations.  Conspiracy is not itself a constitutional tort under 42 U.S.C. § 1983.  Lacey v. Maricopa County, 693 F.3d 896, 935 (9th Cir. 2012).   Because the Court construes the complaint liberally, the Court presumes that Plaintiff is alleging that Defendants have engaged in a civil conspiracy.  Under California law, civil conspiracy requires a plaintiff to plead that "the conspiring parties reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement."  See Gilbrook v. City of Westminister, 177 F.3d 839, 856 (1999) (citing Vieux v. East Bay Reg'l Park Dist., 906 F.2d 1330, 1343 (9th Cir. 1990)).  Each conspirator "need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy."  Id. at 856 (citing United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1541 (9th Cir.1989) (en banc)).  Civil conspiracy claims are subject to a heightened pleading standard, demanding that a plaintiff allege specific facts "containing evidence of unlawful intent, or face dismissal of the claim."  Buckey v. Cnty. of Los Angeles, 968 F.2d 791, 794 (9th Cir. 1992).

Plaintiff's amended complaint does not make any such specific allegations. Plaintiff does not allege any "meeting of the minds" between Defendants Williams, Love, Bell, Ducart, Hodges, and Zamora to violate Plaintiff's First Amendment rights.  Such a failure to plead any specific allegations demands that the conspiracy claim be dismissed.  See Buckey, 968 F.2d at 794.  Because this deficiency could feasibly be cured through amendment, the Court will dismiss the civil conspiracy claims with leave to amend, if Plaintiff can truthfully do so.  See Eldridge, 832 F.2d at 1135–36.  Plaintiff is cautioned that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to meet Rule 8's pleading requirements]."  Ashcroft, 556 U.S. at 678.

### f.    Due Process

Plaintiff claims that Defendants Burris, Countess, Frisk, and Hall violated his due process rights by failing to give him notice and a hearing with respect to his incoming mail

from Michael Roe and his outgoing mail to Mary Ratcliff.[6]

Interests that are procedurally protected by the Due Process Clause may arise from two sources—the Due Process Clause itself and laws of the states. <u>Meachum v. Fano</u>, 427 U.S. 215, 223–27 (1976). In the prison context, these interests are generally ones pertaining to liberty. Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are authorized by state law. <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995) (citing <u>Vitek v. Jones</u>, 445 U.S. 480, 493 (1980) (transfer to mental hospital), and <u>Washington v. Harper</u>, 494 U.S. 210, 221–22 (1990) (involuntary administration of psychotropic drugs). A state may not impose such changes without complying with minimum requirements of procedural due process. <u>Id.</u> at 484.

Deprivations that are authorized by state law and are less severe or more closely related to the expected terms of confinement may also amount to deprivations of a procedurally protected liberty interest, provided that (1) state statutes or regulations narrowly restrict the power of prison officials to impose the deprivation, i.e., give the inmate a kind of right to avoid it, and (2) the liberty in question is one of "real substance." <u>Id.</u> at 477–87. Generally, "real substance" will be limited to freedom from (1) a restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," <u>id.</u> at 484, or (2) state action that "will inevitably affect the duration of [a] sentence," <u>id.</u> at 487.

Plaintiff's allegations are insufficient to state a due process claim. The four alleged confiscation of his mail, as described in the amended complaint, did not constitute a severe change in his conditions of his confinement. Nor did it impose an atypical and significant hardship on Plaintiff in relation to the ordinary incidents of prison life. Accordingly, this claim is DISMISSED with prejudice.

---

[6]This claim is his twelfth causes of action. <u>See</u> Docket No. 11 at 61 and Docket No. 1-1 at 1.

1

2

**United States District Court**
*For the Northern District of California*

### 2.   Additional Defendants

#### a.   Defendant D. Gongora

3   Plaintiff also names Correctional Officer D. Gongora as a defendant.  See Docket No.

4   11 at 1 and 12.  He identifies Gongora as "a member of the Security Squad and assigned to

5   the IGI."  See id. at 12.  Plaintiff alleges that Gongora's responsibilities include screening

6   and processing mail, and that Gongora "was aware of the unlawful obstruction and

7   confiscation of Plaintiff's incoming and outgoing mail for reasons of retaliation and failed to

8   correct the unlawful behavior."  See id.  Plaintiff's only specific factual allegation regarding

9   Gongora is as follows: Plaintiff submitted an inmate request for interview to Gongora in an

10   unrelated matter regarding confiscated material.  Gongora never responded to the interview

11   request which limited Plaintiff's ability to produce documents necessary to successfully

12   resubmit the rejection of his appeal regarding the Roe mailing.  See id. at 27.  Plaintiff does

13   not name Gongora in any cause of action.

14   Plaintiff has failed to specify what constitutional right Gongora violated and how

15   Gongora violated that right.  His general allegation that Gongora was responsible for

16   screening and processing mail does not directly link Gongora to the specific First

17   Amendment violations described *supra*.  Nor does Gongora's failure to respond to the

18   interview request directly link Gongora to the alleged constitutional violations.  Defendant

19   Gongora is DISMISSED from this complaint with leave to amend.  If Plaintiff chooses to

20   replead claims against Defendant Gongora, he must identify what constitutional right

21   Defendant Gongora deprived him of, and he must plead factual content that allows the Court

22   to draw the reasonable inference that Defendant Gongora engaged in "an affirmative act,

23   participate[d] in another's affirmative acts, or omit[ted] to perform an act which he [wa]s

24   legally required to do that cause[d] the deprivation of which [the Plaintiff complains]."  Leer,

25   844 F.2d at 633 (quoting Johnson, 588 F.2d at 743).

26   #### b.   Doe Defendants

27   The use of Doe defendants is not favored in the Ninth Circuit.  See Gillespie v.

28   Civiletti, 629 F.2d 637, 642 (9th Cir. 1980).  However, where the identity of alleged

11

1    defendants cannot be known prior to the filing of a complaint the plaintiff should be given an

2    opportunity through discovery to identify them.  Id.  Failure to afford the plaintiff such an

3    opportunity is error.  See Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999).

4    Accordingly, the claims against Defendants John Doe(s) 1-10 are DISMISSED from this

5    action without prejudice. Should Plaintiff learn the identity of these Doe defendants through

6    discovery, he may move to file an amended complaint to add them as named defendants.  See

7    Brass v. County of Los Angeles, 328 F.3d 1192, 1195–98 (9th Cir. 2003).

8    **C.      Motion to Appoint Counsel**

9         Plaintiff has filed a motion requesting appointment of counsel.  (Docket No. 10.)  He

10   argues that appointment of counsel is warranted because he is indigent; he is untrained in the

11   law; the issues are complex; he has difficulties obtaining declarations from key witnesses;

12   and his potential release from solitary confinement will be a difficult transition.

13        "[I]t is well-established that there is generally no constitutional right to counsel in

14   civil cases." United States v. Sardone, 94 F.3d 1233, 1236 (9th Cir. 1996). Nonetheless,

15   under 28 U.S.C. § 1915(e)(1), the Court has the discretion to appoint volunteer counsel for

16   "any person unable to afford counsel."  The decision to request counsel to represent an

17   indigent litigant under section 1915 is within "the sound discretion of the trial court and is

18   granted only in exceptional circumstances." Franklin v. Murphy, 745 F.2d 1221, 1236 (9th

19   Cir. 1984).  A finding of the "exceptional circumstances" requires an evaluation of the

20   likelihood of the plaintiff's success on the merits and an evaluation of the plaintiff's ability to

21   articulate his claims pro se in light of the complexity of the legal issues involved.  See

22   Agyeman v. Corrections Corp. of America, 390 F.3d 1101, 1103 (9th Cir. 2004); Terrell v.

23   Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wilborn v. Escalderon, 789 F.2d 1328, 1331

24   (9th Cir. 1986). Neither of these factors is dispositive and both must be viewed together

25   before deciding on a request for counsel under § 1915(e)(1).

26        Here, the Court finds that Plaintiff has adequately articulated his claims and the issues

27   are not complex.  Therefore, at this time, the Court DENIES Plaintiff's motion to appoint

28   counsel for lack of exceptional circumstances.  The Court will consider appointment of

United States District Court
For the Northern District of California

12

United States District Court
For the Northern District of California

1    counsel on its own motion, and seek volunteer counsel to agree to represent Plaintiff pro

2    bono, if it determines at a later time in the proceedings that appointment of counsel is

3    warranted.

4                                       **CONCLUSION**

5            For the foregoing reasons, the Court hereby orders as follows:

6            1.      Defendants Yates and Nickell are DISMISSED from this action with prejudice.

7            2.      The due process claims against Defendants Burris, Countess, Frisk and Hall are

8    DISMISSED with prejudice.

9            3.      Defendants John Doe(s) 1-10 are DISMISSED from this action without

10   prejudice. Should Plaintiff learn the identity of these Doe defendants through discovery, he

11   may move to file an amended complaint to add them as named defendants.

12           4.      The First Amendment claim against Defendant Hall; and the conspiracy claim

13   against Defendants Williams, Love, Bell, Ducart, Hodges, and Zamora are DISMISSED with

14   leave to amend.  Defendant Gongora is also DISMISSED from this complaint with leave to

15   amend.  If Plaintiff can cure the pleading deficiencies described above, he shall file an

16   AMENDED COMPLAINT within **twenty-eight (28)** days from the date this order is filed.

17   The amended complaint must include the caption and civil case number used in this order (C

18   14-5578 MEJ (PR)) and the words SECOND AMENDED COMPLAINT on the first page.

19   Plaintiff is advised that he must state facts in the amendment about each Defendant's actions

20   that are sufficient to present a plausible claim that each violated his rights.  See Barren v.

21   Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998) ("[a] plaintiff must allege facts, not simply

22   conclusions, that show that an individual was personally involved in the deprivation of his

23   civil rights.").  **Failure to file an amended complaint by the deadline will result in the**

24   **dismissal of these claims with prejudice**.

25           Plaintiff is advised that an amended complaint supersedes the original complaint.

26   "[A] plaintiff waives all causes of action alleged in the original complaint which are not

27   alleged in the amended complaint."  London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th

28   Cir. 1981).  Plaintiff may not incorporate material from the prior complaint by reference.

13

United States District Court

For the Northern District of California

Defendants not named in an amended complaint are no longer defendants.  See Ferdik, 963 F.2d at 1262.

5. The Court finds that Plaintiff has stated the following cognizable claims: violation of the First Amendment right to send mail against Defendants Burris, Countess, and Frisk; violation of the First Amendment right to receive mail against Defendants Frisk and Patton; First Amendment retaliation claim against Burris, Frisk, and Patton; and First Amendment access to the courts claims against Bramucci, Bond, Ducart, Hodges, Allen, and Zamora.  The Clerk shall issue a summons and Magistrate Judge jurisdiction consent form and the United States Marshal shall serve, without prepayment of fees, the summons, Magistrate Judge jurisdiction consent form, copies of the amended complaint with attachments, and copies of this order on Defendants Burris, Countess, Frisk, Patton, Bramucci, Bond, and Ducart at Pelican Bay State Prison, 5905 Lake Earl Drive, Crescent City, CA 95531, and on Defendants Zamora, Hodges, and Allen at Inmate Appeals Branch, Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento CA 94283.

The Clerk also shall mail a courtesy copy of the amended complaint and a copy of this order to the California Attorney General's Office.

6. In order to expedite the resolution of this case, the Court orders as follows:

a. No later than **91 days** from the date this order is filed, Defendants must file and serve a motion for summary judgment or other dispositive motion.  A motion for summary judgment also must be accompanied by a Rand notice so that Plaintiff will have fair, timely and adequate notice of what is required of him in order to oppose the motion.  Woods v. Carey, 684 F.3d 934, 939 (9th Cir. 2012) (notice requirement set out in Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998), must be served concurrently with motion for summary judgment).[7]

---

[7] If Defendants assert that Plaintiff failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a), Defendants must raise such argument in a motion for summary judgment, pursuant to the Ninth Circuit's recent opinion in Albino v. Baca, 747 F.3d 1162 (9th Cir. 2014) (en banc) (overruling Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003), which held that failure to exhaust available administrative remedies under the Prison Litigation Reform Act, should be raised by a defendant as an unenumerated Rule 12(b) motion).

United States District Court

For the Northern District of California

1    If Defendants are of the opinion that this case cannot be resolved by summary

2 judgment, Defendants must so inform the Court prior to the date the motion is due.

3    b.    Plaintiff's opposition to the summary judgment or other dispositive

4 motion must be filed with the Court and served upon Defendants no later than **28 days** from

5 the date the motion is filed.  Plaintiff must bear in mind the notice and warning regarding

6 summary judgment provided later in this order as he prepares his opposition to any motion

7 for summary judgment.

8    c.    Defendants shall file a reply brief no later than **14 days** after the date the

9 opposition is filed.  The motion shall be deemed submitted as of the date the reply brief is

10 due.  No hearing will be held on the motion.

11    7.    Plaintiff is advised that a motion for summary judgment under Rule 56 of the

12 Federal Rules of Civil Procedure will, if granted, end your case.  Rule 56 tells you what you

13 must do in order to oppose a motion for summary judgment.  Generally, summary judgment

14 must be granted when there is no genuine issue of material fact — that is, if there is no real

15 dispute about any fact that would affect the result of your case, the party who asked for

16 summary judgment is entitled to judgment as a matter of law, which will end your case.

17 When a party you are suing makes a motion for summary judgment that is properly supported

18 by declarations (or other sworn testimony), you cannot simply rely on what your complaint

19 says.  Instead, you must set out specific facts in declarations, depositions, answers to

20 interrogatories, or authenticated documents, as provided in Rule 56(c), that contradict the

21 facts shown in the Defendants' declarations and documents and show that there is a genuine

22 issue of material fact for trial.  If you do not submit your own evidence in opposition,

23 summary judgment, if appropriate, may be entered against you.  If summary judgment is

24 granted, your case will be dismissed and there will be no trial.  <u>Rand v. Rowland</u>, 154 F.3d

25

26

27 _____

28 Such a motion should also incorporate a modified <u>Wyatt</u> notice in light of <u>Albino</u>.  <u>See Wyatt</u> <u>v. Terhune</u>, 315 F.3d 1108, 1120, n.14 (9th Cir. 2003); <u>Stratton v. Buck</u>, 697 F.3d 1004, 1008 (9th Cir. 2012).

952, 962–63 (9th Cir. 1998) (en banc) (App. A).[8]

8.      All communications by Plaintiff with the Court must be served on Defendants' counsel by mailing a true copy of the document to Defendants' counsel.  The Court may disregard any document which a party files but fails to send a copy of to his opponent.  Until Defendants' counsel has been designated, Plaintiff may mail a true copy of the document directly to Defendants, but once Defendants are represented by counsel, all documents must be mailed to counsel rather than directly to Defendants.

9.      Discovery may be taken in accordance with the Federal Rules of Civil Procedure.  No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

10.     Plaintiff is responsible for prosecuting this case.  Plaintiff must promptly keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion.  Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).  Plaintiff must file a notice of change of address in every pending case every time he is moved to a new facility.

11.     Any motion for an extension of time must be filed no later than the deadline sought to be extended and must be accompanied by a showing of good cause.

12.     Plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to the Court for consideration in this case.

13.     The Clerk shall send Plaintiff a blank civil rights form along with his copy of this order.

IT IS SO ORDERED.

DATED:     December 14, 2016                        _____
                                                    Maria-Elena James
                                                    United States Magistrate Judge

---

[8] The Rand notice provided herein does not excuse Defendants' obligation to serve said notice again concurrently with a motion for summary judgment.  Woods, 684 F.3d at 939.