1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

No. C 14-5578 MEJ (PR)

JAMES DARREN CRAWFORD,

  Plaintiff,

 v.

JEFFREY BEARD, et al.,

  Defendants.

_____/

**ORDER SCREENING SECOND
AMENDED COMPLAINT; DENYING
MOTION FOR ORDER DIRECTING
DEFENDANTS TO FILE ANSWER**

Docket No. 32

**INTRODUCTION**

  Plaintiff, a California state prisoner currently incarcerated at Calipatria State Prison

and proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, complaining

of civil rights violations at Pelican Bay State Prison ("PBSP"), where he was previously

housed.  Plaintiff's second amended complaint (Docket No. 29) is currently before the Court

for review pursuant to 28 U.S.C. § 1915A.  Also pending before the Court is Plaintiff's

motion for an order directing Defendants to file an answer to his second amended complaint

(Docket No. 32).

**DISCUSSION**

**A.** **Standard of Review**

  Federal courts must engage in a preliminary screening of cases in which prisoners

seek redress from a governmental entity or officer or employee of a governmental entity.  28

U.S.C. § 1915A(a).  In its review the court must identify any cognizable claims, and dismiss

any claims which are frivolous, malicious, fail to state a claim upon which relief may be

granted, or seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  Pro se pleadings must be liberally construed.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "Specific facts are not necessary; the statement need only '"give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted).  Although a complaint "does not need detailed factual allegations [in order to state a complaint], . . . a plaintiff's obligation to provide the grounds of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).  A complaint must proffer "enough facts to state a claim for relief that is plausible on its face."  Id. at 570.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged deprivation was committed by a person acting under the color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).

**B.     Second Amended Complaint**

The second amended complaint completely replaces all prior complaints.  Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992).  In his second amended complaint, Plaintiff alleges that PBSP officials have violated his First Amendment rights by obstructing his incoming and outgoing mail in retaliation for his writings criticizing the CDCR, and in retaliation for Plaintiff's use of the prison grievance system.  Docket No. 29 ("SAC") at 1–2. Plaintiff's claims fall into five categories, which the Court addresses in turns below.

**1.     Legal Claims**

**a.     First Amendment Right to Send Mail**

Plaintiff alleges that PBSP officials violated his First Amendment right to free speech

2

by failing to send out his mail in three separate instances, which are the bases for his first three causes of action.[1]

Plaintiff states that PBSP processes outgoing mail as follows. A prisoner submits his mail to a correctional officer in his assigned housing unit, who forwards it to the Institutional Gang Investigations Unit ("IGI") for screening. If the mail is not disallowed, IGI forwards the mail to the PBSP mailroom for delivery to the United States Postal Service. Money is removed from the prisoner's trust account to pay for the price of postage. If IGI determines that the mail is disallowed, prison regulations require that the IGI notify the prisoner that the mail has been confiscated by issuing a stopped mail notification (CDCR Form 1819) to the prisoner. See SAC at 8–9.

On November 24 and December 5, 2013, and on January 2, 2014, Plaintiff sent mail to Mary Ratcliff. See SAC at 9–17. The mailings included copies of articles authored by Plaintiff that criticized CDCR policies and practices. See id. Ratcliff never received the mailings. See id. Plaintiff concludes that his mail was deliberately confiscated by the IGI in retaliation for his writings criticizing the CDCR. In support of this conclusion, Plaintiff makes the following allegations: Plaintiff never received a stopped mail notification; Plaintiff's trust account was not debited for postage; Plaintiff's mail went missing three times within a 40-day period; and the missing mail contained articles critical of CDCR that were intended for publication. See id. IGI officers Sergeant Countess and Officer Burris are responsible for monitoring all of Plaintiff's incoming and outgoing mail; and IGI officer Lt. Frisk is responsible for investigating criminal activities in the PBSP SHU and for hearing administrative appeals at the second level of review. See id. at 6–7. Plaintiff alleges that Sergeant Countess, Officer Burris, and Lt. Frisk "knew or should have known" that Plaintiff's outgoing and incoming mail were being unlawfully obstructed. See id. He also

---

[1]Plaintiff also discusses a fourth instance where prison officials delayed sending out his November 2013 mailings to Penny Schoner and Anthony Rayson. SAC at 29–34. However, he does not allege that the delayed sending of these pieces of mail violated his First Amendment right to free speech; rather, he challenges the cancellation of the related grievance in his eleventh cause of action. Id. at 53–55.

1   alleges that Sergeant Countess, Officer Burris, and Lt. Frisk failed to correct the other

2   defendants' behavior.  See id.

3        Prisoners enjoy a First Amendment right to send and receive mail.  See Witherow v.

4   Paff, 52 F.3d 264, 265 (9th Cir. 1995) (citing Thornburgh v. Abbott, 490 U.S. 401, 407

5   (1989)).  A prison may adopt regulations or practices which impinge on a prisoner's First

6   Amendment rights as long as the regulations are "reasonably related to legitimate penological

7   interests."  See Turner v. Safley, 482 U.S. 78, 89 (1987).  Liberally construed, Plaintiff's

8   allegations plausibly support an inference that Sergeant Countess and Officer Burris

9   confiscated or destroyed Plaintiff's mail without justification in violation of his First

10  Amendment right to send mail, see Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)

11  (courts "have an obligation where the petitioner is pro se, particularly in civil rights cases, to

12  construe the pleadings liberally and to afford the petitioner the benefit of any doubt."), and

13  that Lt. Frisk failed to properly train or supervise Sergeant Countess and Officer Burris,

14  thereby proximately causing the First Amendment violation, see Ybarra v. Reno Thunderbird

15  Mobile Home Village, 723 F.2d 675, 680 (9th Cir. 1984) (liability under Section 1983 if

16  prison official, in a supervisory capacity, failed to properly train or supervise personnel

17  resulting in the alleged deprivation).

18            **b.        First Amendment Right to Receive Mail**

19       Plaintiff alleges that his First Amendment right to free speech was violated when two

20  pieces of mail were not delivered to him.

21            **1)        December 2013 mailing from Michael Roe**

22       In the first instance, which is the basis for Plaintiff's fourth cause of action, Plaintiff

23  did not receive a December 2013 mailing from Michael Roe.  The Roe mailing was

24  addressed to James Harvey (another inmate), but also listed Mutope Duguma, Plaintiff's New

25  Afrikan adopted name, and Plaintiff's CDCR identification number.  SAC at 18.  The mailing

26  was delivered to Harvey, who informed Correctional Officer Wahlbeck that it was intended

27  for Plaintiff.  See id. at 17–18.  Officer Wahlbeck routed the mailing to Plaintiff, but Plaintiff

28  never received the mailing.  See id. at 18.  The PBSP mailroom denied returning the mailing

to Roe, and Roe states that the mailing was not returned to him.  See id. at 19 and 23.

Plaintiff concludes that unidentified PBSP IGI officials deliberately discarded his mail to

"cover[] malfeasance and discourag[e] prisoners from pursuing redress for their grievances."

See id. at 19.  Plaintiff submitted an inmate request form to inquire about the whereabouts of

this mailing.  See id. at 18.  At the second level response to the inmate request form, Sgt. Hall

stated that the mailing was improperly addressed; that the mailing was believed to be sent

back to sender via the mailroom by another unknown staff member; and that because the

intended recipient of the mailing was unknown, there was no need to issue a Stopped Mail

Notification to Plaintiff.  See Docket No. 29-2 at 58.  Plaintiff alleges that Sgt. Hall's

response indicated that Sgt. Hall had "personal knowledge of the confiscated mail" and that

Sgt. Hall lied about the mailing being returned to Roe.  See SAC at 18–19, 43.  Plaintiff

alleges that prison officials engaged in an unofficial policy of discarding mailings intended

for prisoners that were either disliked by prison officials or that were engaged in activities

considered detrimental to the debriefing program.  See id. at 19.  Plaintiff alleges that Sgt.

Hall violated Plaintiff's First Amendment rights to receive mail because Sgt. Hall

deliberately encouraged this unofficial policy in order to chill Plaintiff's freedom of speech.

See id. at 19 and 43.

This claim was previously dismissed with leave to amend because Plaintiff's

allegations regarding Sgt. Hall's liability were speculative and conclusory, failed to establish

a custom or policy, and failed to establish how Sgt. Hall had failed to supervise his

subordinates.  Docket No. 15 at 6–7.  The Court finds that Plaintiff has failed to correct these

deficiencies.  Plaintiff's allegation of a single instance of Plaintiff's mail not being delivered

fails to state a custom or policy of deliberately discarding mail intended for prisoners who

protest conditions of confinement.  Moreover, Plaintiff's allegation that Sgt. Hall knew of

such a policy is purely conclusory.  Sgt. Hall's response does not imply any knowledge of

prison officials unlawfully discarding Plaintiff's mailing from Roe.  Rather, Sgt. Hall's

response restates facts provided by Officer Wahlbeck on the request form, and speculates as

to the whereabouts of Plaintiff's mailing from Roe.  Plaintiff has failed to plead allegations

against Sgt. Hall that "raise a right to relief above the speculative level." <u>Bell Atlantic Corp.</u>, 550 U.S. at 555. Accordingly, the claim against Sgt. Hall is DISMISSED with prejudice. <u>See</u>, <u>e.g.</u>, <u>Zucco Partners, LLC v. Digimarc Corp.</u>, 552 F.3d 981, 1007 (9th Cir. 2009) (affirming dismissal without leave to amend where court advised plaintiff of pleading deficiencies but plaintiff failed to correct those deficiencies in amended pleading).

### 2)   January 28, 2014 stop of the San Francisco Bay View

In the second instance, which is the basis for Plaintiff's fifth cause of action, on January 28, 2014, Defendant Frisk stopped a copy of the San Francisco Bay View newspaper from reaching Plaintiff because a personal handwritten note to Plaintiff was concealed within the pages of the newspaper. SAC at 25–26. The stop action was approved by Defendant Patton. <u>See id</u>. Plaintiff alleges that the note was from the newspaper editor referring Plaintiff to a specific article, and that these types of notes are not prohibited by CDCR regulations. <u>See id</u>. Plaintiff alleges that Lt. Frisk and Capt. Patton's confiscation of the San Francisco Bay View violated his First Amendment right to receive mail. <u>See id.</u> at 44.

As discussed *supra*, a prison may adopt regulations or practices which impinge on a prisoner's First Amendment rights as long as the regulations are "reasonably related to legitimate penological interests." <u>See</u> <u>Turner</u>, 482 U.S. at 89. The <u>Turner</u> standard applies to regulations and practices concerning incoming mail received by prisoners from non-prisoners. <u>See</u> <u>Thornburgh</u>, 490 U.S. at 413. Liberally construed, the Court finds that Plaintiff has stated a cognizable claim against Defendants Frisk and Patton for a First Amendment violation of his right to receive mail.

### c.   First Amendment Retaliation

Plaintiff sets forth three First Amendment retaliation claims, relying on the same facts used to support his First Amendment claims based on the right to send mail.[2] Plaintiff claims that Defendants Burris, Countess, and Frisk interfered with his mail in retaliation for Plaintiff's engaging in protected speech with media outlets and political groups. Plaintiff

---

[2]These claims are his sixth, seventh, and eighth causes of action. <u>See</u> SAC at 44–49.

United States District Court
For the Northern District of California

notes that the mailings to Mary Ratcliff contained articles authored by Plaintiff that were critical of CDCR.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote omitted). The Court finds that, liberally construed, Plaintiff's allegations regarding his outgoing mail to Mary Ratcliff sent on November 24, 2013; December 5, 2013; and January 2, 2014, state cognizable retaliation claims.

### d.    First Amendment Right to Petition the Government for Redress

Plaintiff alleges that Defendants Bramucci, Bond, Ducart, Hodges, Allen, and Zamora violated his First Amendment right to petition the government for redress of grievances when they cancelled the following grievances: his grievance challenging the above-referenced confiscation of the San Francisco Bay View; his grievance challenging the above-referenced return or confiscation of his mailing from Michael Roe; and his grievance challenging the delay of outgoing mail sent by Plaintiff to Penny Schoner and Anthony Rayson.[3] Plaintiff contends that prison officials deliberately ignored evidence that Plaintiff had complied with prison regulations in cancelling his grievances. Plaintiff argues that these cancellations violated his First Amendment right because they denied him the ability to successfully obtain relief and prevented him from meeting the exhaustion requirement of the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) ("PLRA").

Under the First Amendment, prisoners have the right to access the courts and the right to petition the government for a redress of grievances. See Bounds v. Smith, 430 U.S. 817, 821 (1977). The right of meaningful access to the courts extends to established prison

---

[3]These claims are his ninth, tenth, and eleventh causes of action. See SAC at 51–55. Defendant Allen is only named in the tenth cause of action, while Bramucci, Bond, Ducart, Hodges, and Zamora are named in the ninth, tenth, and eleventh causes of action.

7

United States District Court

For the Northern District of California

grievance procedures.  Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995) overturned on other grounds by Shaw v. Murphy, 532 U.S. 223, 230 n.2 (2001)); accord Hines v. Gomez, 853 F. Supp. 329, 331–32 (N.D. Cal. 1994).  However, as discussed in the Court's order screening Plaintiff's first amended complaint, to establish a violation of the right of access to the courts, a prisoner must establish that he has suffered an "actual injury" as a result of a prison official's misconduct.  See Docket No. 15 at 8 (citing Lewis v. Casey, 518 U.S. 343, 351–52 (1996)).  An "actual injury" exists where a prisoner has been "hindered [in his] efforts to pursue a legal claim."  Id. at 351; see also Silva v. Vittorio, 658 F.3d 1090, 1102–03 (9th Cir. 2010) (recognizing that access-to-courts claim requires an actual injury to court access), overruled on other grounds as stated by Richey v. Dahne, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015).  Plaintiff has not alleged in the SAC that his claims have been dismissed for failure to exhaust or that he has otherwise been unable to present his claims.  See id. at 348.  In addition, although there is a First Amendment right to petition the government for redress of grievances, there is no right to a response or any particular action.  See Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) ("prisoner's right to petition the government for redress . . . is not compromised by the prison's refusal to entertain his grievance.").  Plaintiff was afforded an opportunity to amend this claim to correct the identified deficiency, but has failed to do so.  Plaintiff's claims that Defendants Bramucci, Bond, Ducart, Hodges, Allen, and Zamora violated his First Amendment right to petition the government for redress of grievances are DISMISSED with prejudice.

**e.      42 U.S.C. § 1983 Conspiracy**

Plaintiff claims that Defendants Williams, Love, Bell, Ducart, Hodges, and Zamora conspired to cover up their First Amendment violations, conspired to discourage Plaintiff publishing articles critical of the CDCR, and conspired to discourage Plaintiff from submitting prison grievances.  A conspiracy under 42 U.S.C. § 1983 is "a conspiracy to deprive a plaintiff of a constitutional or federally protected right under color of state law." Dixon v. City of Lawton, 898 F.2d 1443, 1449 n.6 (10th Cir. 1990).  To state a claim for conspiracy under 42 U.S.C. § 1983, a plaintiff must plead specific facts showing an

8

1   agreement or meeting of minds between the defendants to violate his constitutional rights.

2   Woodrum v. Woodward Cty., 866 F.2d 1121, 1126 (9th Cir. 1989).  Because a conspiracy

3   claim under 42 U.S.C. § 1983 requires proof of subjective intent, it is subject to a heightened

4   pleading standard.  Turner v. County of Los Angeles, 18 Fed. App'x 592, 596 (9th Cir. 2001)

5   (citing Branch v. Tunnell, 937 F.2d 1382, 1386 (9th Cir. 1991) and Buckey v. County of Los

6   Angeles, 968 F.2d 791, 794 (9th Cir. 1992)).

7        Plaintiff pled a similar conspiracy claim in his first amended complaint, which the

8   Court dismissed for failing to allege specific facts containing evidence of unlawful intent or

9   of a meeting of the minds between Defendants Williams, Love, Bell, Ducart, Hodges and

10  Zamora.  Docket No.15 at 9.  The conspiracy claim as pled in the second amended complaint

11  fails to correct this deficiency.  Plaintiff argues that the reliance of Love, Bell, Ducart,

12  Hodges, and Zamora upon Williams' incorrect statement that he had been assessed mailing

13  charges for the missing mailings constitutes evidence of an agreement that these defendants

14  conspired to violate his constitutional rights.  SAC at 12–13 and Docket No. 29-2 at 12–15

15  and 27–28.  This assertion, without more, fails to show an agreement or to meet the

16  particularized factual requirement for conspiracy claims.  Moreover, Plaintiff has attached

17  documents to his complaint that contradict his claim that Warden Ducart refused to

18  investigate his claims.  In a later-filed grievance, PBSP prison officials investigated

19  Plaintiff's claims and agreed that Plaintiff had not been assessed mailing charges for the

20  missing mailings.  Docket No. 29-2 at 34–36.

21       Plaintiff's allegations that Williams, Love, Bell, Ducart, Hodges, and Zamora have

22  conspired to violate his constitution rights fail to "raise a right to relief above the speculative

23  level."  Bell Atlantic Corp., 550 U.S. at 555.  Moreover, Plaintiff's allegation of conspiracy is

24  contradicted by his complaint.  Accordingly, the conspiracy claim is DISMISSED with

25  prejudice.  See, e.g., Zucco Partners, 552 F.3d at 1007.

26       **2.**    **Additional Defendants**

27          **a.**    **Defendant D. Gongora**

28       Plaintiff again names Correctional Officer D. Gongora as a defendant.  See SAC at 7.

United States District Court
For the Northern District of California

9

1   He identifies Gongora as "a member of the Security Squad and assigned to the IGI." See id.

2   Plaintiff does not name Gongora in any cause of action.

3        In the Court's earlier order screening the first amended complaint, the Court dismissed

4   Gongora from the action by granted leave to amend to specify what constitutional right

5   Gongora violated and how Gongora violated that right. Plaintiff has failed to correct this

6   deficiency.

7        Similar to the first amended complaint, Plaintiff alleges that Gongora's responsibilities

8   include screening and processing prisoner mail, and that Gongora "knew or should have

9   known of the wanton, insidious, and unlawful obstruction and confiscation of Plaintiff's

10  incoming and outgoing mail for reasons of retaliation." SAC at 7. Plaintiff's only specific

11  factual allegation regarding Gongora is as follows: Plaintiff submitted an inmate request for

12  interview to Gongora in an unrelated matter. Gongora's failure to respond to the request

13  limited Plaintiff's ability to produce documents necessary to successfully challenge the

14  rejection of his appeal regarding the Roe mailing. See id. at 21.

15       Plaintiff has not identified what constitutional right Gongora violated and how

16  Gongora violated that right. His conclusory allegation that Gongora knew or should have

17  known of the alleged First Amendment violations is insufficient to "raise a right to relief

18  above the speculative level." Bell Atlantic Corp., 550 U.S. at 555. Accordingly, Gongora is

19  DISMISSED with prejudice from the action and terminated as a defendant.

**b.    Doe Defendants**

20

21       The use of Doe defendants is not favored in the Ninth Circuit. See Gillespie v.

22  Civiletti, 629 F.2d 637, 642 (9th Cir. 1980). However, where the identity of alleged

23  defendants cannot be known prior to the filing of a complaint the plaintiff should be given an

24  opportunity through discovery to identify them. Id. Failure to afford the plaintiff such an

25  opportunity is error. See Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999).

26  Accordingly, the claims against Defendants John Doe(s) 1–10 are DISMISSED from this

27  action without prejudice. Should Plaintiff learn the identity of these Doe defendants through

28  discovery, he may move to file an amended complaint to add them as named defendants. See

United States District Court

For the Northern District of California

Brass v. County of Los Angeles, 328 F.3d 1192, 1195–98 (9th Cir. 2003).

**C.      Motion for Order Directing Defendants to Reply to the Second Amended Complaint**

Plaintiff has filed a motion requesting that the Court order Defendants to reply to the second amended complaint.  Docket No. 32.  This motion is DENIED.  The parties should follow the briefing schedule set forth below.

**CONCLUSION**

For the foregoing reasons, the Court hereby orders as follows:

1.      The Court finds that the second amended complaint states the following cognizable claims: violation of the First Amendment right to send mail against Defendants Burris, Countess, and Frisk (first, second and third causes of action); violation of the First Amendment right to receive mail against Defendants Frisk and Patton (fifth cause of action); First Amendment retaliation claim against Burris, Countess, and Frisk (sixth, seventh, and eighth causes of action).  The second amended complaint is the operative complaint and supersedes all prior complaints.

2.      The following claims are DISMISSED with prejudice: the First Amendment claim against Sgt. Hall (fourth cause of action); the First Amendment claim against Bramucci, Bond, Ducart, Hodges, Allen and Zamora (ninth, tenth, and eleventh causes of action); and his 42 U.S.C. § 1983 conspiracy claim against Williams, Love, Bell, Ducart, Hodges and Zamora (twelfth cause of action).  Hall, Bramucci, Bond, Ducart, Hodges, Allen, Zamora, Williams, Love, and Bell are TERMINATED from this action.

3.      Defendant D. Gongora is TERMINATED from this action.

4.      Defendants John Doe(s) 1–10 are DISMISSED from this action without prejudice.  Should Plaintiff learn the identity of these Doe defendants through discovery, he may move to file an amended complaint to add them as named defendants.

5.      The Court's prior briefing schedule is VACATED.  In order to expedite the resolution of this case, the Court orders as follows:

a.      No later than **91 days** from the date this order is filed, Defendants must

*United States District Court*
For the Northern District of California

11

file and serve a motion for summary judgment or other dispositive motion.  A motion for summary judgment also must be accompanied by a <u>Rand</u> notice so that Plaintiff will have fair, timely and adequate notice of what is required of him in order to oppose the motion. <u>Woods v. Carey</u>, 684 F.3d 934, 939 (9th Cir. 2012) (notice requirement set out in <u>Rand v. Rowland</u>, 154 F.3d 952 (9th Cir. 1998), must be served concurrently with motion for summary judgment).[4]

If Defendants are of the opinion that this case cannot be resolved by summary judgment, Defendants must so inform the Court prior to the date the motion is due.

b.      Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the Court and served upon Defendants no later than **28 days** from the date the motion is filed.  Plaintiff must bear in mind the notice and warning regarding summary judgment provided later in this order as he prepares his opposition to any motion for summary judgment.

c.      Defendants shall file a reply brief no later than **14 days** after the date the opposition is filed.  The motion shall be deemed submitted as of the date the reply brief is due.  No hearing will be held on the motion.

6.      Plaintiff is advised that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.  Rule 56 tells you what you must do in order to oppose a motion for summary judgment.  Generally, summary judgment must be granted when there is no genuine issue of material fact — that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case.

---

[4] If Defendants assert that Plaintiff failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a), Defendants must raise such argument in a motion for summary judgment, pursuant to the Ninth Circuit's recent opinion in <u>Albino v. Baca</u>, 747 F.3d 1162 (9th Cir. 2014) (en banc) (overruling <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1119 (9th Cir. 2003), which held that failure to exhaust available administrative remedies under the Prison Litigation Reform Act, should be raised by a defendant as an unenumerated Rule 12(b) motion). Such a motion should also incorporate a modified <u>Wyatt</u> notice in light of <u>Albino</u>.  <u>See Wyatt v. Terhune</u>, 315 F.3d 1108, 1120, n.14 (9th Cir. 2003); <u>Stratton v. Buck</u>, 697 F.3d 1004, 1008 (9th Cir. 2012).

United States District Court
For the Northern District of California

When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says.  Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(c), that contradict the facts shown in the Defendants' declarations and documents and show that there is a genuine issue of material fact for trial.  If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you.  If summary judgment is granted, your case will be dismissed and there will be no trial.  Rand v. Rowland, 154 F.3d 952, 962–63 (9th Cir. 1998) (en banc) (App. A).[5]

7.      All communications by Plaintiff with the Court must be served on Defendants' counsel by mailing a true copy of the document to Defendants' counsel.  The Court may disregard any document which a party files but fails to send a copy of to his opponent.  Until Defendants' counsel has been designated, Plaintiff may mail a true copy of the document directly to Defendants, but once Defendants are represented by counsel, all documents must be mailed to counsel rather than directly to Defendants.

8.      Discovery may be taken in accordance with the Federal Rules of Civil Procedure.  No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

9.      Plaintiff is responsible for prosecuting this case.  Plaintiff must promptly keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion.  Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).  Plaintiff must file a notice of change of address in every pending case every time he is moved to a new facility.

10.     Any motion for an extension of time must be filed no later than the deadline sought to be extended and must be accompanied by a showing of good cause.

11.     Plaintiff is cautioned that he must include the case name and case number for

---

[5] The Rand notice provided herein does not excuse Defendants' obligation to serve said notice again concurrently with a motion for summary judgment.  Woods, 684 F.3d at 939.

United States District Court
For the Northern District of California

1     this case on any document he submits to the Court for consideration in this case.

2         IT IS SO ORDERED.

3

4     DATED: _____May 17, 2016_____    _____

5                                  Maria-Elena James
                                     United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court

For the Northern District of California

14