UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES DARREN CRAWFORD,<br>Plaintiff,<br>v.<br>JEFFREY BEARD, et al.,<br>Defendants. | Case No. 14-cv-05578-MEJ<br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT**<br>Re: Dkt. No. 55 |

Plaintiff, a California state prisoner currently incarcerated at Calipatria State Prison and proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983, complaining of civil rights violations at Pelican Bay State Prison ("PBSP"), where he was previously housed. On May 17, 2106, the Court screened the second amended complaint and found that Plaintiff had stated the following cognizable claims: violation of the First Amendment right to send mail against Defendants Burris, Countess, and Frisk (first, second, and third causes of action); violation of the First Amendment right to receive mail against Defendants Frisk and Patton (fifth cause of action); and a First Amendment retaliation claim against Defendants Burris, Countess, and Frisk (sixth, seventh, and eighth causes of action). *See generally* Dkt. No. 36. Now pending before the Court is Defendants' motion to dismiss and for summary judgment. Dkt. No. 55. Plaintiff has filed an opposition and a related declaration, Dkt. Nos. 56 and 57, and Defendants have filed a reply, Dkt. No. 61. For the reasons set forth below, the Court GRANTS Defendants' motion to dismiss and for summary judgment.

**DISCUSSION**

**I.  Motion to Dismiss**

Defendants Burris, Frisk, and Countess argue that they are entitled to dismissal of

Plaintiff's first, second, and third causes of actions for a First Amendment right to send mail because Plaintiff fails to allege facts showing that Defendants Burris, Frisk, and Countess personally participated in the constitutional violation and because it cannot be reasonably inferred from the multi-step procedure for processing outgoing inmate mail that Defendants Burris, Frisk, and Countess were involved in the diversion of Plaintiff's mail. Defendants also argue that they are entitled to dismissal of Plaintiff's first and sixth causes of actions between there is a contradiction between Plaintiff's allegation that he attempted to send mail to Mary Ratcliff on November 24, 2013 and the attachment to the SAC, such that Plaintiff has failed to allege facts sufficient to support a claim that the November 24, 2013 claim occurred. Defendants Frisk and Countess argue that they are entitled to dismissal of Plaintiff's supervisory liability claims under the first, second, and third causes of actions because Plaintiff has failed to allege facts sufficient to show, or from which it can be reasonably inferred that, they or their subordinate Burris had any connection the three pieces of outgoing mail in question, or that they knew of such mailings, or that their supervision or training of a subordinate caused the diversion of such mailings. Defendants further argue that Plaintiff's sixth, seventh, and eighth causes of action for First Amendment retaliation should be dismissed because Plaintiff has failed to allege facts from which it can be reasonably inferred that Defendants were involved with, or caused, the underlying diversion of mail. Defendants also argue that they are entitled to dismissal of Plaintiff's claims for declaratory relief, claims for injunctive relief, and request for punitive damages. Finally, Defendants argue that they are entitled to dismissal of Plaintiff's official capacity claims for damages because they are barred by the Eleventh Amendment.

**A.  Second Amended Complaint**

In his second amended complaint, Plaintiff alleges that PBSP officials have violated his First Amendment rights by obstructing his incoming and outgoing mail, and that the interference with his mail was in retaliation for his writings criticizing the CDCR, and in retaliation for Plaintiff's use of the prison grievance system. Docket No. 29 ("SAC") at 1–2.

Plaintiff makes the following allegations regarding Defendants.

Defendant Burris is a PBSP correctional officer, and a member of the Institutional Gang

2

Investigation Unit ("IGI")'s Security Squad. Officer Burris' general responsibilities include investigating serious and criminal activities in PBSP's Special Housing Units ("SHUs"); screening and processing prisoner mail; and hearing appeals at the Second Level of Review. Officer Burris is assigned to monitor all of Plaintiff's incoming and outgoing mail. If Officer Burris determines that Plaintiff's mail violates prison regulations, he issues Plaintiff a Stopped Mail Notification Form. Dkt. No. 29 at 6–7.

Defendant Frisk is a PBSP correctional sergeant, and a member of the Institutional Gang Investigation Unit ("IGI")'s Security Squad. Officer Frisk's general responsibilities include investigating serious and criminal activities in PBSP's Special Housing Units ("SHUs"); screening and processing prisoner mail; and hearing appeals at the Second Level of Review. Officer Frisk is assigned to monitor all of Plaintiff's incoming and outgoing mail. Dkt. No. 29 at 6.

Defendant Countess is a PBSP correctional sergeant, and a member of the Institutional Gang Investigation Unit ("IGI")'s Security Squad. Officer Frisk's general responsibilities include investigating serious and criminal activities in PBSP's Special Housing Units ("SHUs"); screening and processing prisoner mail; and hearing appeals at the Second Level of Review. Officer Frisk is assigned to monitor all of Plaintiff's incoming and outgoing mail. Dkt. No. 29 at 6.

### 1. First Cause of Action

In Plaintiff's first cause of action, he alleges that Defendants Burris, Countess, and Frisk violated his First Amendment right to send mail when, on or about November 24, 2013, they confiscated an outgoing piece of mail addressed to Mary Ratcliff which contained articles authored by Plaintiff that were critical of the CDCR. Plaintiff alleges that Defendants Countess and Frisk caused the First Amendment violation by failing to adequately supervise their subordinates. Dkt No. 29 at 38–39.

Plaintiff making the following allegations regarding this mailing.

On November 24, 2013, he submitted the mailing to Officer Yates for processing, and attached a Trust Account Withdrawal Order Form to the mailing to cover the cost of postage. Per PBSP policy, Officer Yates would have forwarded the mail to the IGI, where Defendant Burris, under the supervision of Defendants Countess and Frisk, would have been responsible for

3

inspecting the mail. Plaintiff did not receive a Stopped Mail Notification and no money was removed from Plaintiff's Trust Account for the postage. The mailing was never received by Ratcliff. Plaintiff therefore concludes that the mailing was never forwarded to the PBSP mailroom for process and delivery, and was destroyed or stopped by IGI staff. Dkt. No. 29 at 9–10.

### 2. Second Cause of Action

In Plaintiff's second cause of action, he alleges that Defendants Burris, Countess, and Frisk violated his First Amendment right to send mail when, on or about December 5, 2013, they confiscated an outgoing piece of mail addressed to Mary Ratcliff which contained articles authored by Plaintiff that were critical of the CDCR. Plaintiff alleges that Defendants Countess and Frisk caused the First Amendment violation by failing to adequately supervise their subordinates. Dkt No. 29 at 39–41.

Plaintiff making the following allegations regarding this mailing.

On December 5, 2013, he submitted several pieces of mail, including the above-referenced mailing, to Officer Nickell for processing, and attached a Trust Account Withdrawal Order Form to the mailing to cover the cost of postage. Per PBSP policy, Officer Nickell would have forwarded the mail to the IGI, where Defendant Burris, under the supervision of Defendants Countess and Frisk, would have been responsible for inspecting the mail. Plaintiff did not receive a Stopped Mail Notification and no money was removed from Plaintiff's Trust Account for the postage. The mailing was never received by Ratcliff. Plaintiff therefore concludes that the mailing was never forwarded to the PBSP mailroom for process and delivery, and was destroyed or stopped by IGI staff. Dkt. No. 29 at 10–11.

### 3. Third Cause of Action

In Plaintiff's third cause of action, he alleges that Defendants Burris, Countess, and Frisk violated his First Amendment right to send mail when, on or about January 2, 2014, they confiscated an outgoing piece of mail addressed to Mary Ratcliff which contained articles authored by Plaintiff that were critical of the CDCR. Plaintiff alleges that Defendants Countess and Frisk caused the First Amendment violation by failing to adequately supervise their subordinates. Dkt No. 29 at 41–42.

4

Plaintiff making the following allegations regarding this mailing.

On January 2, 2014, he submitted the above-referenced mailing to Officer Russell for processing, and attached a Trust Account Withdrawal Order Form to the mailing to cover the cost of postage. Per PBSP policy, Officer Russell would have forwarded the mail to the IGI, where Defendant Burris, under the supervision of Defendants Countess and Frisk, would have been responsible for inspecting the mail. Plaintiff did not receive a Stopped Mail Notification and no money was removed from Plaintiff's Trust Account for the postage. The mailing was never received by Ratcliff. Plaintiff therefore concludes that the mailing was never forwarded to the PBSP mailroom for process and delivery, and was destroyed or stopped by IGI staff. Dkt. No. 29 at 12–15.

### 4. Sixth Cause of Action

In Plaintiff's sixth cause of action, he alleges that Defendants Burris, Countess, and Frisk confiscates the mailing he attempted to send to Mary Ratcliff on November 24, 2013 in retaliation for his writing criticizing CDCR, PBSP-SHU, and prison officials. Dkt No. 29 at 44–46.

### 5. Seventh Cause of Action

In Plaintiff's seventh cause of action, he alleges that Defendants Burris, Countess, and Frisk confiscates the mailing he attempted to send to Mary Ratcliff on December 5, 2013 in retaliation for his writing criticizing CDCR, PBSP's IGI, and prison officials. Dkt No. 29 at 47–48.

### 6. Eighth Cause of Action

In Plaintiff's eighth cause of action, he alleges that Defendants Burris, Countess, and Frisk confiscates the mailing he attempted to send to Mary Ratcliff on January 2, 2014 in retaliation for his writing criticizing CDCR, PBSH-SHU, and prison officials. Dkt No. 29 at 48–49.

### B. Legal Standard

Under Fed. R. Civ. P. 12(b)(6), the Court must dismiss a complaint if a plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), opinion amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001). In deciding a motion to dismiss, the Court accepts as true all material allegations

in the complaint and construes them in the light most favorable to the plaintiff. *See Newman v. Sathyavaglswaran*, 287 F.3d 786, 788 (9th Cir. 2002). "The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell*, 266 F.3d at 988 (internal citations omitted). *Pro se* pleadings are generally liberally construed and held to a less stringent standard. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

In deciding whether to dismiss a claim under Rule 12(b)(6), the Court must limit its review to the four corners of the operative complaint, and may not consider facts presented in briefs or extrinsic evidence. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); *Sprewell*, 266 F.3d at 988 ("Review is limited to the contents of the complaint."). A court may consider documents attached as exhibits to the complaint, exhibits incorporated by reference in the complaint, and matters of which the court may take judicial notice. *See U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may ... consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."). "[A] court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (emphasis in original).

**C.  Analysis**

For the reasons set forth below, the Court agrees that Plaintiff has failed to state a claim for violation of his First Amendment right to send mail (first, second, and third causes of action), and failed to state a claim for First Amendment retaliation (sixth, seventh, and eighth causes of action), and dismisses these claims with prejudice. The Court also grants summary judgment in favor of Defendants on Plaintiff's fifth cause of action. As a result, the second amended complaint will be dismissed. The Court therefore declines to address Defendants' arguments regarding the contradiction between the first and sixth course of action, declaratory relief, injunctive relief, and official capacity claims for damages.

### 1. First, Second and Third Causes of Action

#### a. Causation

Defendants argue that Plaintiff fails to allege facts sufficient to link Defendants to the alleged violations of Plaintiff's First Amendment right to send mail. Specifically, Defendants allege that there no facts that indicate that the mail was forwarded to Defendants by Officers Yates, Nickell, and Russell; that Defendants saw, confiscated, or destroyed the mail; or that Defendants failed to forward the mail to PBSP mailroom personnel. Defendants also argue that Plaintiff never submitted to Officer Yates the specific alleged piece of outgoing mail, as evinced by the Form 22 signed by Officer Yates which shows that none of the mail submitted to Officer Yates was addressed to either Ratcliff or the SFBV and evinced by the inmate appeal intended to exhaust the second cause of action wherein Plaintiff stated that he originally tried to send out the alleged articles at issue on December 5, 2013, which contradicts his claim that he submitted them for mailing on November 24, 2013. Defendants argue that Plaintiff relies on conclusory allegations, unwarranted inferences, and speculation, which are insufficient to demonstrate each defendant personally participated in the alleged violations of Plaintiff's First Amendment right to send mail.

Plaintiff argues that it is reasonable to infer that Defendants retained the mailings to Ratcliff for the following reasons. First, Plaintiff argues that it is reasonable to infer that Defendant Burris reviewed the Ratcliff mailing because IGI prison officials screen all incoming and outgoing mail; during the relevant time period, Defendants Burris, Countess, and Frisk were assigned to the PBSP IGI; and from January 23, 2014 through December 19, 2014, and from January 1, 2015 through August 19, 2015, all of Plaintiff's stopped mail notices indicated that Plaintiff's mail was reviewed by Defendant Burris. Second, Plaintiff argues that it is reasonable to infer that Defendants bore ill will towards him because his writings were critical of the CDCR; because he had won a case against PBSP officials related to stopped mail; Defendant Frisk contacted Ratcliff in 2014 and expressed opposition to SFBV's publication of pen pal requests from prisoners; Defendant Frisk falsely stated that Plaintiff's mail was processed by the mailroom in response to Plaintiff's Form 22 Request for Interview regarding the December 2013 and

7

1 January 2014 mailings that never reached Ratcliff; and Defendant Countess impliedly blamed floor staff for the lost mail where floor staff had signed Form 22s attesting to placing the mailings in the IGI in-box. Finally, Plaintiff argues that it is reasonable to infer that Defendants confiscated the Ratcliff mailings because all other mailings sent out on those specific dates, none of which were critical of PBSP or PBSP IGI, reached their intended recipients. Dkt. No. 56 at 4–10.

The Court finds that Plaintiff relies on conclusory allegations, unwarranted inferences, and speculation to allege Defendants' personal participation in the alleged constitutional violation. Plaintiff speculates that Defendants bear him animus, but alleges no facts from which this may be reasonably inferred. Animus cannot be reasonably inferred from Plaintiff's allegation that Defendant Frisk contacted Ratcliff in 2014 and expressed opposition SFBV's publication of pen pal requests from prisoners where Defendant Frisk also told Ratcliff in the same conversation that he would be willing to accept copies of the SFBV that did not have the offending note. It is unwarranted to infer that Defendant Burris received and deliberately confiscated the mailings to Ratcliff based on the allegations that floor staff attested to receiving Plaintiff's mailings to Ratcliff; that Defendant Burris screened Plaintiff's mail during the relevant time period; and that Plaintiff's mailings contained material critical of the CDCR and PBSP IGI.

The Court further finds that these claims should be dismissed with prejudice. In Plaintiff's numerous pleadings filed in this action, he repeatedly relies on conclusory and speculative allegations to allege Defendants' liability. The Court has previously pointed out this deficiency to Plaintiff, and allowed Plaintiff to amend his complaint to correct such deficiency. Granting further leave to amend would be futile. *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) ("[T]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.") (quoting Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir.1989)).

**2. First, Second and Third Causes of Action – Supervisory Liability**

Defendants argue that Plaintiff has failed to state a claim against Defendants Countess and Frisk for supervisory liability. Defendants argue that Plaintiff relies on conclusory, and not factual, assertions that the training of IGI officers is inadequate; that the inadequate training was a

deliberate choice on Defendants Countess' and Frisk's part; and that the inadequate training caused the alleged constitutional violation. Defendants also argue that Plaintiff has failed to allege facts that Defendants Countess and Frisk had notice of their subordinate officers' alleged constitutional violations and intentionally disregarded them.

Plaintiff argues that through discovery he will be able to obtain information about the IGI officials working at PBSP during the relevant time period. He further argues that the supervisor need not be directly and personally involved to establish supervisory liability. Finally, he argues that he lodged numerous complaints about his confiscated mail that placed Defendants Countess and Frisk on notice about the alleged constitutional violations, and that Defendants Countess and Frisk made it impossible for prison staff to conduct objective investigations regarding his complaint. Plaintiff argues that Defendants Countess and Frisk can be held liable because they failed to take remedial steps after the violations.

The Court agrees that Plaintiff has failed to state a claim for supervisory liability against Defendants Countess and Frisk for the First Amendment right to send mail violations. Plaintiff's allegation that Defendants Countess and Frisk were aware of Defendant Burris's alleged constitutional violation is solely based on their roles as supervisors of Defendant Burris, and not based on any specific factual allegations. Moreover, Plaintiff's argument that Defendants Countess and Frisk failed to take remedial steps after the violations presupposes a violation. Finally, to the extent that Plaintiff believes that discovery will yield evidence of supervisory liability, this is insufficient to defeat a motion to dismiss. The Court GRANTS Plaintiff's motion to dismiss the claim against Defendants Countess and Frisk for supervisory liability.

The Court further finds that these claims should be dismissed with prejudice. In Plaintiff's numerous pleadings filed in this action, he repeatedly relies on conclusory and speculative allegations to allege Defendants' liability. The Court has previously pointed out this deficiency to Plaintiff, and allowed Plaintiff to amend his complaint to correct such deficiency. Granting further leave to amend would be futile. *Gen. Dynamics C4 Sys., Inc.*, 637 F.3d at 1058.

### 3. Sixth, Seventh, and Eighth Causes of Action

Plaintiff's sixth, seventh, and eighth causes of action allege that Defendants confiscated his

mail as alleged in the first, second, and third causes of action in retaliation for his political writing criticizing the CDCR and PBSP IGI. Plaintiff's sixth, seventh, and eighth causes of action arise out of his first, second, and third causes of action, which constitute the adverse action element of a retaliation claim. Because the Court has found that Plaintiff's first, second, and third causes of action fail to state a claim for confiscation of mail and dismissed these claims with prejudice, Plaintiff has therefore also failed to state a retaliation claim. Accordingly, the Court GRANTS Plaintiff's motion to dismiss the sixth, seventh, and eighth causes of action and will dismiss these claims with prejudice.

## II. Motion for Summary Judgment

Defendants argue that Plaintiff did not exhaust his administrative remedies regarding his fifth cause of action, wherein he alleges that Defendants Frisk and Patton violated his First Amendment right to receive mail. Plaintiff alleges that administrative remedies were effectively unavailable to him because Defendants improperly screened out his grievance.

### A. Legal Standard

"No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). All available remedies must be exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Id.* Section 1997e(a) requires "proper exhaustion" of available administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Proper exhaustion requires using all steps of an administrative process and complying with "deadlines and other critical procedural rules." *Id.* at 90.

Defendants bear the burden of demonstrating the existence of an available administrative remedy and Plaintiff's failure to exhaust that available remedy. *Albino*, 747 F.3d at 1172. Here, there is no dispute that CDCR has an administrative remedy process for inmate grievances. *See* Cal. Code Regs. tit. 15, § 3084.1(a). The CDCR's administrative remedy process provides its inmates and parolees the right to appeal administratively "any policy, decision, action, condition,

or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). In order to exhaust available administrative remedies within this system, a prisoner must submit his complaint on CDCR Form 602 and proceed through several levels of appeal: (1) first formal-level appeal filed with one of the institution's appeal coordinators, (2) second formal-level appeal filed with the institution head or designee, and (3) third formal-level appeal filed with the CDCR director or designee. Cal. Code Regs. tit. 15, § 3084.7. This satisfies the administrative remedies exhaustion requirement under § 1997e(a). Id. §§ 3084.1(b); 3084.7(c)(3); *Barry v. Ratelle*, 985 F. Supp. 1235, 1237–38 (S.D. Cal. 1997). If an inmate's grievance does not comply with a procedural rule but prison officials decide it on the merits anyway at all available levels of administrative review, it is exhausted. *Reyes v. Smith*, 810 F.3d 654, 656, 658 (9th Cir. 2016) (agreeing with all "sister" circuits in so holding).

### B. Factual Background

The following facts are undisputed unless otherwise noted.

In Plaintiff's fifth cause of action, he alleges that Defendants Frisk and Patton violated his First Amendment right to send mail when, on January 24, 2014, confiscated a copy of the San Francisco Bay View / National Black Newspaper ("SFBV") that was addressed to him. Dkt. No. 29 at 44.

On January 24, 2014, Defendants Frisk and Patton confiscated a copy of the SFBV that was addressed to Plaintiff, on the grounds that it violated PBSP Department Operations Manual ("DOM") Addendum, Section 54010, Attachment 10, #31, in that there was a personal handwritten note directed at Plaintiff concealed in the newsletter. Dkt. No. 55-14 at 19–23.

On January 29, 2014, Plaintiff filed appeal PBSP-D-14-00293 complaining that Defendants Frisk and Patton's confiscation of the SFBV violated CDCR regulations and was done in retaliation for Plaintiff's political and activist writings. Dkt No. 55-14 at 15–23.

On January 30, 2014, PBSP-D-14-00293 was cancelled at the second level of review because Plaintiff had exceeded the allowable number of appeals filed within a fourteen-day period, as set forth in section 3084.1(f) of the California Code of Regulations, title 15. Dkt No. 55-14 at

11

13. Section 3084.1 of the California Code of Regulations, title 15, allows an inmate to file one appeal every fourteen calendar days unless the appeal is accepted as an emergency appeal. 15 Cal. Code Regs. § 3084.1(f). The screening letter informed Plaintiff that he had last submitted an appeal on January 27, 2014, and that therefore no appeal should be submitted until February 11, 2014. Dkt No. 55-14 at 13. The screening letter also advised Plaintiff that he could resubmit the appeal within the timeframes specified in sections 3084.6(a) and 3084.8(b). Section 3084.6(a) of the California Code of Regulations, title 15, sets forth the criteria for rejecting, cancelling, and withdrawing appeals. 15 Cal. Code Regs. § 3084.6(a). Section 3084.8(b) of the California Code of Regulations, title 15, sets forth the time limits for filing appeals. 15 Cal. Code Regs. § 3084.8(b). Pursuant to subsection b, an inmate must submit an appeal within 30 calendar days of: (1) the occurrence of the event or decision being appealed, or; (2) upon first having knowledge of the action or decision being appealed, or; (3) upon receiving an unsatisfactory departmental response to an appeal filed. 15 Cal. Code Regs. § 3084.8(b).

On February 17, 2014, Plaintiff submitted appeal PBSP-D-14-00483, which was unrelated to the January 24, 2014 confiscation of the SFBV and unrelated to the related appeal. Appeal PBSP-D-14-00483 alleges that PBSP staff interfered with outgoing mail to Mary Ratcliff that Plaintiff had handed to PBSP staff for mailing in December 2013 and January 2014. Dkt. No. 55-10 at 4–7.

On February 25, 2014, Plaintiff resubmitted PBSP-D-14-00293, but PBSP-D-14-00293 was again rejected for violating section 3084.1(f). Because Plaintiff had submitted appeal PBSP-D-14-00483 on February 17, 2014, section 3084.1(f) required him to wait until March 11, 2014 before he could file another appeal. Dkt. No. 55-14 at 14. The screening letter again advised him that he should resubmit the appeal within the timeframe specified in section 3084.8(b). Dkt. No. 55-14 at 14.

On March 13, 2014, Plaintiff submitted appeal PBSP-D-14-00820, which was also unrelated to the January 24, 2014 confiscation of the SFBV and unrelated to the related appeal. Dkt. No. 55-4 at 13. Appeal PBSP-D-14-00820 grieved legal issues. Dkt. No. 55-4 at 13.

On March 26, 2014, Plaintiff resubmitted PBSP-D-14-00293, but PBSP-D-14-00293 was

1  again rejected, this time because it was submitted more than thirty days after the incident grieved, in violation of section 3084.8(b). Dkt. No. 55-14 at 12.

### C. Analysis

Plaintiff argues that administrative remedies were effectively unavailable to him because prison officials improperly screened out PBSP-D-14-00293 and because prison officials provided him with misinformation. Plaintiff argues that his resubmission of PBSP-D-14-00293 was improperly rejected because it was timely filed on February 25, 2014, which was less than thirty days after the January 30, 2014 rejection letter, citing to *Sapp v. Kimbrell*, 623 F.3d 813 (9th Cir. 2010). Plaintiff also argues that the screening letter misled Plaintiff into believing that he could file and resubmit his appeal after fourteen days, and that this misinformation precluded him from exhausting his administrative remedies, citing to *Nunez v. Duncan*, 591 F.3d 1217 (9th Cir. 2010).

Plaintiff is correct that in *Sapp* the Ninth Circuit found an exception to the PLRA's administrative exhaustion requirement where prison officials improperly screen out an inmate's appeals, thereby rendering administrative remedies effectively unavailable. *Sapp*, 623 F.3d at 822–23. To satisfy this exception to exhaustion, an inmate must show: "(1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations." *Id*. at 823–24. Plaintiff does not qualify for the exception set forth in *Sapp* because prison officials' rejection of PBSP-D-14-00293 was consistent with applicable regulations. PBSP-D-14-00293 was rejected on January 30, 2014, because Plaintiff had exceeded the number of allowable appeals that could be submitted within a fourteen-day period, as set forth in section 3084.1(f). If Plaintiff had resubmitted PBSP-D-14-00293 between February 11, 2014 — fourteen days after his last appeal had been filed, consistent with section 3084.1(f) — and February 23, 2014 — thirty days after the January 24, 2014 confiscation at issue, consistent with section 3084.8(b), the resubmission of PBSP-D-14-00293 would have complied with all applicable regulations. But, because Plaintiff chose to submit an unrelated appeal after February 11, 2014, he restarted the clock on the fourteen-day period during which he could file an appeal. By filing an

13

unrelated appeal (PBSP-D-14-00483) on February 17, 2014, Plaintiff precluded himself from filing another appeal until March 11, 2014, thereby preventing himself from resubmitting PBSP-D-14-00293 in the time period required by section 3084.8(b). In short, prison officials' rejection of PBSP-D-14-00293 were consistent with, and supported by, applicable regulations, and Plaintiff's choices regarding what appeals to file, and when he filed these appeals, precluded him from filing PBSP-D-14-00293 in accordance with prison regulations.

Plaintiff is also correct that in *Nunez* the Ninth Circuit found that an inmate's failure to timely exhaust administrative remedies is excused where he takes reasonable and appropriate steps to exhaust and is precluded from exhausting, not through his own fault but by prison officials' mistakes. *Nunez*, 591 F.3d at 1224. Plaintiff alleges that prison officials provided him with misinformation when, in the February 25, 2014 letter rejecting his second attempt to submit PBSP-D-14-00293, they informed him that he could resubmit PBSP-D-14-00293 within fourteen days of his last appeal. Plaintiff misreads the February 25, 2014 letter. The February 24, 2014 letter states: "PBSP-D-14-00483 was accepted on 2/24/14. Do not submit another appeal until 03/11/14." Dkt. No. 55-14 at 14. The February 24, 2014 letter informed Plaintiff *when* he could file another appeal, but did not specify that he should resubmit PBSP-D-14-00293 at that time, or that any appeals filed at that time would be in compliance with applicable prison regulations. As discussed *supra*, Plaintiff's own choices about which appeals to file and when to file these appeals is what precluded him from filing PBSP-D-14-00293 in accordance with applicable prison regulations.

Plaintiff has failed to exhaust his administrative remedies with respect to his fifth cause of action, wherein he alleges that Defendants Frisk and Patton violated his First Amendment right to receive mail. His appeal regarding this cause of action was properly rejected because it failed to comply with prison regulations. "[A] cancellation or rejection decision does not exhaust administrative remedies." 15 Cal. Code Regs. § 3084.1(b); *Sapp*, 632 F.3d at 821. In choosing to file another, unrelated grievance rather than resubmitting PBSP-D-14-00293 when he was able to again file grievances, Plaintiff did not take "reasonable and appropriate steps" to pursue his administrative remedies, and is therefore not entitled to the exception set forth in *Sapp*. Because

prison officials did not make a mistake in rejecting his grievances, he is not entitled to the exception set forth in *Nunez*. The Court GRANTS summary judgment in favor of Defendants with respect to Plaintiff's fifth cause of action, and dismisses the fifth cause of action.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss and for summary judgment. The Court DISMISSES Plaintiff's first, second, third, sixth, seventh, and eight causes of action with prejudice for failure to state a claim. The Court DISMISSES Plaintiff's fifth cause of action for failure to exhaust administrative remedies. In granting the motion to dismiss and for summary judgment, the Court has DISMISSED all the remaining cognizable causes of action. The Clerk is directed to enter judgment in favor of Defendants and close the case.

This order terminates Dkt. No. 55.

**IT IS SO ORDERED.**

Dated: September 29, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge